Council, we have an appeal and a cross-appeal in this case, so feel free to deal with the cross-appeal issues as part of your original 20 minutes. Thank you, Your Honor. The Court has asked that the parties be prepared to brief Russell v. Equifax ARS and Gearing v. Gleeson, and the Court will now proceed to review the case. The Court has asked that the parties be prepared to brief Russell v. Equifax ARS and Gearing v. Gearing v. Gearing v. Gleeson, and the Court will proceed to review the case. The Court has asked that the parties be prepared to brief Russell v. Equifax ARS and Gearing v. Gearing v. Gearing v. Gleeson, and the Court will proceed to review the case. The strict liability standard, in my thinking, is that it specifically aids the lower courts in resolving a function that is given to them through the FDCPA. The FDCPA carries with it both a compensatory and a regulatory function. In the first instance, it provides a consumer an entitlement to recover damages for being subjected to the collection activity. That particular area carries with it a causation requirement, so that unless and until there is some type of violation that, in fact, imposes injury on a person, they don't have a cause of action under the compensatory aspect of the FDCPA. Counsel, what do we do with section 1692KC, having to do with intent, which states, A collector may not be held liable in any action brought under this chapter if the collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error. If it's a strict liability statute, what do you do with this language? It's a strict liability statute subject to a bona fide error of defense, and that is the best way that I can characterize that. This Court has also had occasion, and as broadly cited, I believe it's Baker v. G.C. Services Corp., in which you laid out the standards for the bona fide error of defense, which says that once, and the language that I commonly adopt out of Baker is that the statute avoids the traditional evidentiary hurdles that are traditionally associated with cases that require a proof of outrageous conduct by a high standard. The FDCPA primarily shifts the burden of proof from the consumer to the debt collector to say, here's the law. If the law is violated, then the collector has to show that he has procedures and other systems in place that would, you know, let him off the hook. Does this mean that the lawyer would have to investigate the validity of every debt presented to him by the creditors? In other words, what you're saying seems to imply to me that if the collection agency comes to me and I'm a lawyer, and they say, this is the debt owed, this is the date, this is the person, are you saying that I as a lawyer then would have to independently investigate each and every debt? Yes, I am, Your Honor. You are. What are the policy considerations favoring that? The debt collection agencies, say, have 5,000 clients, I'm the lucky lawyer that gets selected to collect on its behalf, and it's my duty to hire an investigator and investigate independently those debts? Or is something more required, and I'm not saying that there wasn't something more in this case, whether he should have known, as Shannon mentioned, the intent, but whether there were facts in this case that should have led him to believe to check out this statement, because there have been problems with the partnership and the accuracy of the records and so forth, but your answer is that he absolutely has to investigate every single debt regardless of the extraneous circumstances? The one area that the Ninth Circuit has not addressed in the FDCPA area is the responsibilities of a lawyer. I believe there are several Ninth Circuit cases, Masuda v. Thomson and some others that have been cited in other circuits, but at the Ninth Circuit level, I don't believe the lawyer issue has been directly assessed to the best of my knowledge. I think this is an area of first impression. And I tend to look to both the Hines case, if you look at what the Supreme Court suggested, it was a very complex legal issue. The lawyer filed suit with the basis of liability being that his client had inadvertently purchased the wrong insurance policy and applied it to a deficiency judgment on a car. If the Supreme Court is saying that liability can arise based upon a lawyer suing upon such a deep-rooted area of law and the basis of the complaint, I would have to say that the Hines case supports specifically what I just said. I don't mean to say that a lawyer is automatically liable for filing a false complaint. The legal community is generally recognized as a foundation, if you will, for both the plaintiff and the defendant's lawyers that people are not going to get sued frivolously. There are standards both at the state and federal level that I think the Hines decisions as well as the developed case law says that lawyers are supposed to do that. The system that we have is that you are displacing the function of the lawyer and giving it to a collector, which in this case, Ms. Brumley is a very zealous collector and I believe her testimony was that she's received awards for her zealousness, but her zealousness is best phrased in the comment that we'll sue anybody that the client wants to sue. That does not fit within the confines of what I would expect a lawyer to do to sue somebody based upon what a collector says, based upon what the client says. In this case, we had a bogus debt, or at least from our perspective, it was a bogus debt and we have to this date not received verification of it and a collateral case that was brought up by opposing counsel was in fact found against Capital Credit and Collections to say that this was a bogus debt and it was a false and deceptive practice for them to be submitting this itemized statement, which is false verification. Counsel, what do we do with the jury verdict? The jury verdict was so narrowly, I'm going to say, the issue that we tried to the jury was not my issue. Well, it's an issue in this case, is it not? Yes, they narrowly said that we have to, it was not a fair trial, Your Honor, and that's all, it was not a fair trial. It was not a fair trial. Because the judge, or Magistrate Judge Gelder, pinned this down to such a level that I was embarrassed by my own opening argument, and that's about the best I can say. Mr. Goode raised in, you know, some of the material that in conference between counsel, I considered a token issue. I not only considered less than a token issue, I considered it a non-issue because with the this jury was out for three to four hours to come back with a defense verdict. And during the course of the trial, there was at least one objection raised when the judge addressed the jury during their deliberations that we thought he was showing, or at least suggested that they come back on a reasonableness standard and do only that which is reasonable. So even at the trial level, I think the most logical way to dispose of the jury verdict is that the judge instructed the jury on a reasonable standard, which does not apply. I would go back to strict liability for just a moment. Do we have to reach the strict liability issue if we were to find, for example, that there took about the validity of the debt? Would that be enough to reverse? That would be enough to reverse, but I've asked, I think, the court to find in our favor the issues that I find that are compelling as far as our favor goes. If you look at Mr. Hassan's collection notice, he says, if the FDCPA applies, the two Russell says that any type of conflicting information in an FDCPA notice is sufficient to impose liability. When an attorney presupposes that he's not going to review the debt and sends a collector a notice that says, if the FDCPA applies, you have a, on a form letter, you have a presupposed condition. This lawyer is not going to review this debt before he sends it out, and it provides a information to the consumer, which in and of itself should impose liability, at least for statutory damages in this case. I think you have, I would, I would overstep my bounds if I may. The court gave us the Gearing and Russell case, and I did shepherdize it in preparation for today. The parties have briefed the question of imputed knowledge. Does the debt collector or does the attorney, is he imputed with knowledge of the collector's files? And the, there is a subsequent case that was. Excuse me, counsel. I'm not sure I understood you correctly. You say you're referring to a case that was not cited in the briefs. I'm sorry. Was it brought to the attention of the court under a 28-J letter? No, it's, it's. Well, and I would, if you do not want me to present it, I won't. No, we, but we can't prepare unless we know what you're going to talk about. Okay. We obviously don't know what, if you want to submit that on a gum sheet to the, the clerk, to call it to our attention. Insufficient copies, by the way, for opposing counsel and the court. Yeah, I understand. And that's where I am remiss in my duties in preparation for the appeal. I was preparing last night and was jeopardizing the cases of Gearing and Russell, and both of them are cited in one case that did in fact deal with the issue of imputed knowledge. So if you would like me to, I can submit it. Well, why don't you just get from the deputy clerk the form and make out sufficient copies, and we certainly will have a chance to look at it after submission. Okay. Thank you, Your Honor. Counselor, while you're still speaking, you might want to say something about the cross appeal on attorney's fees. Um, I believe I'm going to submit on the brief. Sure. That's fine. You want to reserve the rest of your time? I will reserve the rest. You may do so. We'll now hear from the, uh, appellees. May it please the court. Wendy Margolis on behalf of defendant Jeff Hassan, uh, excuse me, Mr. Goldson, excuse me, Mr. Good and I are going to divide our time. So I'm going to take 12 minutes and then I will try and keep up here. The issue in this case comes down to plaintiff's dispute regarding the amount of this obligation to this, to this doctor, this clinic. The act that we're talking about is designed, the whole purpose of the act is to deal with debt collection practices, tactics, techniques, methods to try and get people to pay amounts due or the, or the amounts. Counselor, again, I'm going to have to ask you to speak up. I'm sorry. It may be me, but thank you. It may be me and my health. Let me just ask, for some reason it appears the sound, which was very strong at the beginning, is now tapered off. Is there a problem with the mechanics here or, or not? Okay. I will do my best. Is that better? That we have amplification at the moment. At least I don't hear it coming, feeding back. So we'll all have to speak a little louder. I will do my best. Excuse me. And I apologize for the health issues here as well. The issue about strict liability in this case, with respect to the other circuits, it is somewhat of an imprecise label. And if you look at the cases, which you have with Russell especially, that's where this starts, the court just asserted this is strict liability. There's no statutory construction. There's no analysis and assertion. This is strict liability. The Gearing case adopts that as well. So there hasn't been a direct analysis of that. But I think the more precise way to look at it is each section of the act sets out what the standard is for that particular section. So the first section that's at issue in this case, which is section 1692G, the notice provisions. Congress has set out certain information that a debt collector must provide to a consumer. It is, the purpose of that section, and it's set out in the legislative history, is to prevent or eliminate the problem of dunning the wrong person or a debt that's been paid. It is a notice provision to identify, to notify the consumer of their legal rights. In other words, you don't have to just pay this. You can, you do have rights to dispute this. So the question is, have you, has the debt collector provided this information? If they don't provide the information, then it's a violation because they haven't said what Congress says they need to say. There are cases regarding whether the language has been overshadowed, and that's what came up in the Russell case. Where, yes, the debt collector gave the required notice, but then on the other side of the document gave other notice that was inconsistent, unclear. That was something that was deemed misleading, potentially misleading to a debt collector, excuse me, to a consumer. And that, again, is what this Act is designed to prevent, is abusive, harassing, oppressive debt collection practices. Counsel, what bothered me was that the cases that you cited are not related to the Oregon Unfair and Debt Collection Practices Act. They interpreted provisions of Oregon's Residential Landlord and Tenant Act, and do you have any authority to support your conclusion that those cases should apply in this case? And I hope I'm not misunderstanding you, Ira. I think those cases were cited in support of the cross-appeal on the attorney fees issue. I'm sorry, I thought you were representing Hassell on the attorney's fees. I am on the attorney fees as well as on the underlying, that's in the cross-appeal. There's also a primary, that's okay. In terms of the issue here with defendant Hassell, with the lawyer, is strictly in the amount of the debt. We're still on the strict liability point. Is that what you're? Correct. Yeah. We get, yeah. That's fine. So, we're talking about, let's go back, the notice provisions at section 1692G. It is to give the information, and the definition of debt, noticeably, in this statute, the statute defines debt as an obligation or alleged obligation. There is, the statute contemplates, there can be disagreements and disputes over the amount due. So, when we're talking, again, about strict liability, the idea that because this first letter, the first initial contact, communication to the consumer, listed an amount that, in a subsequent arbitration, or perhaps in a settlement, or somewhere down the line, a different number has been determined to be the amount due. That doesn't make it a violation of the statute. What defendant Hassell said in this letter is, this is the amount that is alleged to be due. There's no misrepresentation there. There's no misstatement of the amount due. This is the amount the creditor is claiming is due. This is the information we're providing to you, as the statute requires us to do. Now, on this point, was there evidence in the record that Hassell knew that there was some problem with these accounts, with these doctors, and that there were some inaccuracies in the accounts, and so forth? Wasn't he put on notice? So, the record does not support that from the outset, when he was first hired by Capital Collections to prepare this complaint and bring a collection action. No, there is, the plaintiffs did send him, in response to this initial validation notice, the plaintiffs did send a letter back saying, oh, there's a history of problems, and here are some receipts, which, in fact, aren't in the record. So, we don't really know. To account the notes from Brumley, isn't that relevant to whether or not the debt was valid? Mr. Hassell did not have those notes, and I don't find, I've yet to find any authority for the proposition that plaintiffs have cited that the lawyer is somehow imputed or charged with the knowledge of either the debt collector, excuse me, the debt collection agency, or for that matter, the creditor. Well, it would be a problem for the agency, though, would it not? I'm not prepared to, I would assume that is some knowledge. Yes, that's in their records. They know what the issue is. I would make one point on that, though. There's no doubt, at least after the fact, we know there had been problems with this clinic and their billing practices, and yet, at the time the debt was assigned to the collection agency, the creditor wrote, hand wrote, this is an actual verified debt, adjustments have been made. So, there may have been some issues with the account in the past, but the creditor, the underlying creditor has said adjustments have been made, and so, there's no evidence to suggest at that point the creditor believed this was still a doubtful debt or the amount was still being disputed. The other issue where the strict liability concept is used is in subsection 1692E, which states the general proposition that a debt collector cannot use false, misleading, deceptive, again, tactics, representations regarding the amount of the debt. We go back to the definition of debt, which is an alleged obligation. There's other language within the statute, I think it's under 1692G, it might be subsection C, that says even if a debt consumer doesn't dispute a debt, that's not conclusive on the issue of liability. That's not an admission of liability in a civil action, and that's another issue, I think, that's getting kind of confused, and we're conflating separate events here, which is debt collection practices from a debt collector versus what happens in a lawsuit, when all of a sudden now we're on a level playing field. We've got each side is represented. It's not this oppressive, aggressive, harassing kind of conduct that Congress was seeking to eliminate on a debt collector, saying you've got this unsophisticated consumer, and you've got this very sophisticated debt collector trying to use various tactics to make these people pay. Once we get into a lawsuit litigation setup, the rules are somewhat different. The environment is different, and the Hines case that plaintiff's counsel referred to I think is enlightening in that respect, where the Supreme Court says, no, we're not going to read this statute to create an exception for lawyers, because of the legislative history, the context. We don't believe that's what Congress meant, and any of these anomalies that people identify that could come from lawyers being within this act, we're going to trust the courts to construe the various provisions of the act in a plausible way that isn't going to limit judicial remedies, which the statute clearly is not intended to do. We don't believe that these, excuse me, my time is almost up here, that these anomalies, that the other provisions have to be interpreted in a way. Excuse me? That's remaining time. Oh, excuse me. I just want to remember my counselor. We still have about three minutes. Thank you. And I think what the courts of guidance, the Supreme Court's guidance in Hines is important, and Judge Nelson, it goes to the points that you were raising. At what point does a lawyer become responsible for investigating and vouching for the debt that the creditor is claiming? At what point is a lawyer going to be responsible for, you know, from the get-go reviewing accounting principles and insurance contracts? Well, certainly there are no other warnings to that lawyer about those debts. I didn't want to say that he had no duty, or that there would be no circumstances. I think there are, you know, if there was evidence in the record, and of course the record doesn't support that, that, you know, there is knowledge that this amount is not owing, that there's, you know, whatever that evidence could be, there's going to be room for some liability there. Now, whether it's under this Act or under different remedies, and that I'm not, you know, I don't know, I have no doubt there is a remedy for that kind of conduct. But whether it's within the scope of this statute and what Congress's intent was in enacting this statute, and the types of behavior the statute was designed to eliminate, and what it wasn't designed to eliminate, and the legislative history, which we've included in, I think it's in the excerpts here, says the Congress was not intending to impose unreasonable restrictions on ethical debt collectors. We're not trying to foreclose debt collection lawsuits, especially not from a lawyer's standpoint of collecting these debts. Thank you, Counsel. May it please the Court, Counsel, my name is William Goode. I represent Capital Credit and Collection Service. Let me first, I guess, take a little bit of a bold move here and address the strict liability before I get to the trial issue as well. Strict liability, I do not believe, applies in the Act. For this reason, and that is it runs afoul of whether or not a debt collector has to prove a debt that is really something for the state courts to do in bringing Debt Collection Act, and where the legislature, Congress did not intend to impose strict liability can be found in the definition section under the definition of the debt and of a consumer. And there it gives us a range. What's the section number? That's 1692A. If you'll refer to subsections three and five, under five it says debt means any obligation or alleged obligation of a consumer. And then subsection three means any natural person obligated or allegedly obligated. So when you have this range of the debt to an alleged, an obligation to an alleged obligation, what you have is a range of possibilities. That means someone can be wrong. They can allege a debt and be wrong. So Congress contemplated that just because you say someone owes $100 doesn't mean they do under subsection 1692A.5 because they may be wrong. And in fact, under subsection three of A, it may even be the wrong consumer. It may be a consumer allegedly owing. So to impose strict liability when Congress itself contemplated that there's a difference between an alleged obligation and an obligation, it just runs afoul and it can't be resolved. And so you have to look, why did Congress put in that language? It could have simply said alleged obligation or it could have said obligation, but it said both. So it means there can be error in what's being claimed or in what's being represented in this case. The way the statute is written, at best, some of the language might imply a presumption of some type of intent and then 1692K3, the bona fide error defense for those sections where well, let me see, representation or if we don't really address it, such as under subsection E, there's one section that actually digresses and says knew or should have known. I think that's subsection H. And so when you have varieties of language like this, it implies that in some places there may be a presumption just by the language, such as when you say misrepresentation, common sense tells you there has to be some intent there. Now thus far, a lot of the discussion here today and also in the briefs talks about what people knew or should have known. Well, again, if we have strict liability, do you really have to get to the level of knew or should have known or address what's in the knowledge of the debt collector? So this is where I think strict liability does not fit with the definitions in the statute. Now, let's assume we agree with you on that point. I'm speaking only for myself. Weren't there things in the record indicating that he knew or should have known that there were problems with these debts? No, I don't believe so on these facts. What about the Brumley information, her notes? The problem is this is a dialogue and process between the debt collectors, both of them, Mr. Hassan and capital credit through Ms. Brumley, and the consumers. And in its attempt to resolve differences of, you know, what, of who knows what about this debt. So again, that does not imply that, well, if she's, if Ms. Brumley was ultimately wrong on what the debt turned out to be. But wasn't she on notice that there was a problem sufficient to seriously challenge the validity? I think she came to learn that there was a problem when she got into analyzing the underlying documents supporting this debt. And again, that points more to someone's knowledge rather than simply strict liability. If you err, you're wrong, and you've violated the act. Well, why isn't that a fact question to defeat summary judgment? It's not a fact question to defeat summary judgment, because we have to go back to what did Congress intend for the debt collectors to be obligated to do? And if what Congress wanted was to prohibit abusive tactics. And did it really intend to have to prove every debt before they go that far? And I think I have some language in there of the Sanborn case in my brief that talks about that. Now, let me address the two cases that the court brought to our attention. And that is the Gearing and the Russell case. There's something very different about the Gearing and the Russell case than going to the underlying debt. And here, with Gearing, this claim of subrogation, this is something that the debt collector had entirely within their own knowledge. And in Russell, when they designed their own form of having one type of notice on the front and a different statement on the back, and whether it's 30 days or 20 days or 25 days, again, this is something that was entirely within the knowledge of the debt collector. That differs from being able to prove the validity of the underlying debt. So in other words, what I'm saying is in Gearing and Russell, they set up what they were going to allege. And they had it within their own knowledge to determine for Gearing whether or not they were subrogators. And in the Russell, they had it within their own power to design their own forms. However, here in this case, the consumers are challenging whether or not they have any liability whatsoever. Their position actually is that, well, we had some agreement, or our healthcare provider had an agreement with an insurance carrier that we shouldn't be billed at all. Therefore, the debt's never valid. So there would be no way of meeting that standard if a debt collector had to prove the validity of every debt. Mr. Gerlton, his opening argument suggested that Russell was really built on Ninth Circuit precedent. Do you have a response? I don't think it was built on Ninth Circuit precedent because none of these cases have ever really come out and said strict liability applies or it doesn't apply expressly to one section or another. In fact, Russell has been distinguished on the facts many times by district courts within its own circuit, as well as other courts. And that's really the difference here. And when you start to distinguish all these cases on their facts, then we're beginning to build up a body of case law that may show that strict liability is not the rule under the Fair Debt Collection Practices Act. I do want to take a moment to address our failure to address the attorney issues and the cross-appeal. We've decided that we're going to allow that to be submitted on the briefs. I think the party -- Do you want to say anything about the motion to compel? It's discussed in the brief, but I just asked you. I don't see that it's relevant to the decision here by the court today because I think what was being compelled had nothing to do with the theory being claimed by the consumers. And I must say one other thing. Now, let me shift just a moment to this trial. Mr. Grill makes a statement that it was an unfair trial. Judge Geraldings at one point during deliberations had a court reporter transcribe an hour of testimony, and then he read it to the jury because he understood what was the important aspect of the FDCPA. And that was the conduct of the debt collector. That was the issue there. And that was really the issue in the trial, is this oral communication that was going back and forth, and whether the consumer had, in effect, consented to the type of dialogue. So I think the trial, I think Judge Geraldings went well beyond what he needed to do to allow this jury to decide that issue on the facts. And of course, this court needs to find whether or not there's evidence in the record to support the jury's decision, and of course there is. And I have put ample dialogue in the record to support just that evidence. Thank you, counsel. Your time has expired. Mr. Grill, do you have some reserve time? Yes. The Fair Debt Collection Practices Act is designed for two things. A, you don't want to done the wrong person. And secondly, you don't want to done somebody for a debt that has already been paid. The procedures under 1692G were set up to avoid both of those purposes. Unfortunately, my clients never got the opportunity to find out whether or not they'd paid this debt. Mr. Clark had a long experience wherein he maintained his insurance to cover his wife's psychological needs. As a result of that, she was trying to work with the original creditor to resolve that because she liked her therapist and wanted him to get compensated for his services. Unfortunately, this intervening unlicensed psychologist who had her billing problems ultimately got the debt and that prevented, or it was basically the breakdown in the system that arose from this bogus debt. The 1692G process that is important to our case was that Mr. and Mrs. Clark, if you read the transcript, you find out they both had, or at least Mr. Clark had some experience in collection practices himself. They followed each and every procedure that the FD, or right, that the FDCPA provides to people. In that regard, I would like to at least address to the court what I consider to be significant issues that sometimes raise inquiry. 1692Ga1 and 2 are debt-specific information that are required to be disclosed. 1692a3 is the question of does an oral dispute count that would put a debt collector under a heightened standard of review so that they no longer have the presumption of validity to continue collecting the debt. Section 1692Ga4 is the section that requires that the consumer put a dispute in writing to trigger an obligation on the debt collector to provide the verification. And 1692Ga5 is the section that specifically says they are entitled to obtain the name and address of the original creditor. Now, if you look at just the regulatory purpose, because our position is that there are two causes of action under the FDCPA, a compensatory purpose and a regulatory purpose. The least sophisticated consumer standard is one where you look only at those additional damages for evaluating conduct of the debt collector that is based solely upon the conduct of the debt collector. I'm not sure I understand your argument with respect to subsection A. What's the point of those five subsections? Well, my position is, and not just mine, but other people's position is that those are five distinct items. The industry standard is to collectively group subsections A, 3, 4, and 5 into one paragraph. The point I'm trying to make is that subsection A.3 says that if you don't respond or dispute this debt within 30 days, there's a presumption of validity. Assuming the debtor, as in this case, disputed it both orally and in writing, there is no longer a presumption of validity that the debt collector can rely upon. That triggers a requirement for the debt collector to at least authenticate the debt before proceeding forward. Now, under A.4, it talks about a written dispute by the debt collector. In the case of a written dispute, it not only heightens the requirement for the debt collector to verify the debt, but it also requires that they obtain and mail verification. So, you've got two competing sections there where I believe the Mahan case that was at least partially briefed was indicted. This court said that a writing is required to dispute a debt. The subsection A.3 does not require writing, and there's other sections of that. And I think I drew to the court, at least the Hawaii District Court, who distinguished the Mahan case, and it would be helpful for this court to try and clarify that anomaly, if you will. In the broad context of this case, Mrs. Clark was beat up, and she suffered injury from it. Now, the collectors both stipulated, and I think on the agreed facts, that they all knew that this was a mental health bill. The mental health care industry specifically contracts with providers to avoid sending mental health care bills out to collectors. It says, don't do it. Judge Gelderts, in his opinion, said that contract does not apply to debt collectors, which I believe is also a sport. Thank you very much. Thank you very much, counsel. The case just argued will be submitted for decision.
judges: Browning, D.W. Nelson, O'Scannlain